# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DWAYNE P. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-1202-KHV |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability and disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–34 and supplemental security income ("SSI") benefits under Title XVI of the SSA. For reasons stated below, the Court affirms the decision of the Commissioner.

## Procedural Background

On October 10, 2012, plaintiff filed his SSI application with the Social Security Administration. On May 17, 2016, plaintiff filed his disability and disability insurance applications. In both applications, plaintiff claimed a disability onset date of January 1, 1985. Plaintiff's benefit application was denied initially and on reconsideration. Plaintiff later amended the disability onset date to June 7, 2014, the day after an unfavorable decision on a prior application.

On August 8, 2018, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the SSA and that he was not entitled to benefits. See Transcript Of Administrative Record (Doc. #12) filed November 8, 2019 ("Tr.") at 12–22. On June 10, 2019, the Appeals Council denied plaintiff's request for review. Tr. at 1–5. Plaintiff appealed the final

decision of the Commissioner to this Court. The decision of the ALJ stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

**Factual Background**

The following is a brief summary of the factual record.

Plaintiff is 47 years old. He has not engaged in substantial gainful activity since June 7, 2014, the amended alleged onset date. Plaintiff alleges that he is disabled because of seizures, bulging discs, depression and anxiety.

**I.     Medical Evidence And Consultative Examinations**

Since at least 2013, plaintiff has received treatment for grand mal seizures and anxiety. On January 25, 2016, he was diagnosed with mixed anxiety and depressed mood.

After plaintiff fell in late 2015, he experienced left hip pain and continued back pain. In July of 2016, he was diagnosed with mild to moderate disc bulges at the mid to lower thoracic levels.

On September 26, 2016, Kristy Cramer, MA, LCPC, with Koeneman Psychological Services, LLC, conducted a consultative mental examination of plaintiff. Cramer opined that plaintiff was experiencing mild to moderate symptoms of anxiety but displayed no specific cognitive deficits. Tr. at 512. Based on plaintiff's performance on concentration-related mental status tasks, she opined that "his capacity for concentration would be adequate for focusing on simple tasks over a normal 8-hour work day." Id. She opined that his intellectual abilities most likely fell in the average range and that "he would be able to understand and follow simple instructions" and "make simple, work-related decisions." Id.

On January 26, 2017, Michael H. Schwartz, Ph.D., conducted a consultative mental examination of plaintiff. Dr. Schwartz diagnosed plaintiff with major depression,

methamphetamine dependence (in remission), marijuana dependence (in remission), borderline intellectual functioning, a seizure disorder and psycho-social stressors. Tr. at 531. Dr. Schwartz noted that plaintiff appeared to have impairment "in processing speed which would impact his persistence and pace," but he did not believe that would necessarily prevent plaintiff from doing simple unskilled-type jobs. Id.

In October of 2016, Charles Fantz, Ph.D., a state agency consultant, opined that plaintiff could understand and remember one to two step instructions and focus and persist at one to two step tasks for an eight-hour day. Tr. at 78–80. In February of 2017, Crystal Duclos, Psy.D., a second state agency consultant, opined that plaintiff had the same limitations, i.e. only one to two step instructions and only one to two step tasks in an eight-hour day. Tr. at 112–14.

## II. Plaintiff's Testimony

On June 19, 2018, at a hearing before ALJ Melvin B. Werner, plaintiff testified that due to pain from his degenerative disc disease, he needed to walk around at least twice per hour for approximately 15 minutes each time. He testified that because of back pain, his wife did everything for him. In addition, plaintiff testified that social anxiety was a significant disability for him. He explained that he was unable to be around others in a public setting because it caused him to "flip out" from panic and anxiety.

## III. Vocational Expert Opinion

The ALJ asked the vocational expert about the work opportunities for a person who can perform sedentary work but can stand for only one hour of an eight-hour day; who can never climb ladders, ropes or scaffolds; who can never work around hazards such as unprotected heights; who can occasionally balance, stoop, kneel, crouch and crawl; who can do simple, routine, repetitive

jobs (SVP 1 or 2),[1] involving simple and few work-related decisions and relatively few workplace changes; who can have occasional interaction with co-workers, supervisors and the general public; and who requires position alternation at 30 to 40 minute intervals. Tr. at 58–62. The vocational expert testified that someone with that residual functional capacity ("RFC") and plaintiff's age, education and work experience could not perform his past work but could perform work as a document preparer with 45,000 jobs available in the national economy, electronics assembly worker with 19,000 jobs available nationally and polisher with 20,000 jobs available nationally. Tr. at 62–63. The vocational expert testified that if someone with that RFC had a limitation of one to two step tasks, he could perform the job of document preparer but not the positions of electronics assembly worker or polisher. Tr. at 62.

## IV. ALJ Findings

The ALJ denied benefits at step five, finding that plaintiff was capable of performing work. In his order of August 8, 2018, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since June 7, 2014, the amended alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease, depression, and anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

---

[1] SVP stands for "specific vocational preparation" and is defined in the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1230 n.4 (9th Cir. 2009) (quoting DOT Appendix C, page 1009 (4th ed. 1991)). SVP 1 means that only a short demonstration is required to learn the job. Almodovar v. Berryhill, No. 17-CV-8902 (BCM), 2019 WL 1313883, at *2 (S.D.N.Y. Mar. 22, 2019). SVP 2 means that it may take up to one month to learn the job. Id.

Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can stand for 1 hour[] out of an 8-hour day. The claimant should never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can do simple, routine, repetitive jobs (SVP 1 [or] 2), involving simple work-related decisions and relatively few workplace changes. The claimant can have occasional interaction with co-workers, supervisors, and the general public. The claimant requires position alternation at 30–40 minute[] intervals.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on February 13, 1973 and was 41 years old, which is defined as a younger individual, on the amended alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2014, through the date of this decision.

Tr. at 14–22 (citations omitted).

## Standard Of Review

The Court must determine whether the Commissioner's decision is free from legal error and supported by substantial evidence. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. (quoting Lax, 489 F.3d at 1084).

Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261–62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## **Analysis**

Plaintiff bears the burden of proving disability under the SSA. See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The SSA defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520, 416.920. If the claimant satisfies steps one, two and three, he will automatically be found disabled; if the claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

The ALJ denied benefits at step five, finding that plaintiff is capable of performing sedentary work with certain restrictions. Plaintiff argues that the ALJ's RFC determination is not

supported by substantial evidence.

I.     **Residual Functional Capacity Determination**

The ALJ must assess RFC based on all relevant evidence in the record, including information about individual symptoms and any "medical source statements," i.e. opinions by medical sources regarding what plaintiff can do despite his impairments. Social Security Ruling ("SSR") 96-8p, 1996 WL 874184, at *7 (July 2, 1996). As part of the narrative discussion of the RFC assessment, the ALJ must explain how he or she considered and resolved any material inconsistencies or ambiguities in the evidence. Id. The RFC assessment must always consider and address medical source opinions. Id. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why he or she did not adopt the opinion. Id. In making this decision, the ALJ must consider all the evidence, and discuss the evidence supporting his decision, the uncontroverted evidence upon which he chooses not to rely and significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

Here, the ALJ noted the consultative opinions of the two state agency consultants, Drs. Fantz and Duclos, who opined generally that plaintiff had the ability to understand and remember one to two step instructions, as well as focus and persist at one to two step tasks for an eight-hour workday. Tr. at 20. The ALJ gave "great weight" to the opinions of Drs. Fantz and Duclos. Id. Even so, the ALJ crafted an RFC that limited plaintiff only to simple, routine, repetitive jobs (SVP 1 and 2) involving simple work-related decisions and relatively few workplace changes. The ALJ did not include in the RFC the restriction that plaintiff could only perform one to two step tasks. Because the ALJ did not include the restriction related to one to two step tasks in the RFC or explain why he omitted it, substantial evidence does not support the RFC. See Martinez v. Astrue, 422 F. App'x 719, 724 (10th Cir. 2011) (error lies not in how ALJ

weighed consultative opinion, but failure to include all of the limitations found in opinion without explaining why he rejected them, especially in light of conclusion that opinion was entitled to "great weight"); Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (ALJ not entitled to pick and choose through uncontradicted medical opinion, taking only parts favorable to finding claimant not disabled).

Even if the ALJ had included the one to two step limitation in the RFC, he identified one occupation—document preparer—that plaintiff could perform with the limitation and noted that the vocational expert testified that this occupation had 45,000 jobs available nationally.[2] Plaintiff does not contest the ALJ finding that plaintiff could perform the job of document preparer. Based on plaintiff's ability to perform the job of document preparer, defendant asks the Court to find that the ALJ's failure to include the limitation related to one to two step tasks in the RFC was harmless.

## II.     Harmless Error

At step five, the burden shifts to the Commissioner to show that based on the RFC, claimant can perform other jobs existing in significant numbers in the national economy.

Initially, plaintiff responds that the ALJ did not determine that 45,000 constituted a significant number of jobs nationally. See Plaintiff's Social Security Reply Brief (Doc. #17) filed March 6, 2020 at 5; see also Plaintiff's Social Security Brief (Doc. #13) filed December 23, 2019 at 13 (remand appropriate so ALJ can decide in first instance whether job of document preparer existed in significant numbers). The Court disagrees. The ALJ cited vocational expert testimony that plaintiff was able to perform the requirements of three representative occupations such as document preparer with 45,000 jobs available in the national economy, electronics assembly

---

[2] At the hearing, the vocational expert testified that other than the job of document preparer, the other two jobs that he identified (electronics assembly worker and polisher) were a "little more detailed" and required "more than one to two steps to complete the task." Tr. at 63.

worker with 19,000 jobs in the national economy and polisher with 20,000 jobs in the national economy. Tr. at 22. The ALJ concluded that based on this testimony, plaintiff could perform "other work that exists in significant numbers in the national economy." Id. In context of the vocational expert's testimony and the entire ALJ decision, the Court finds that the ALJ concluded that each of the three representative occupations had a significant number of available jobs in the national economy. See Tr. at 21 ("Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.").

Plaintiff next argues that based on the factual record, the Court cannot determine that 45,000 constitutes a significant number of jobs nationally. The relevant test to determine whether a significant number of jobs exists is "either jobs in the regional economy or jobs in the national economy." Raymond v. Astrue, 621 F.3d 1269, 1274–75 n.2 (10th Cir. 2009); see also 42 U.S.C. § 423(d)(2)(A) (national economy is benchmark but "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country"); 20 C.F.R. § 416.966(c) (using national economy as benchmark). Here, as in many cases, the vocational expert only testified as to the number of jobs in the national economy. See Raymond, 621 F.3d at 1274 (controlling statutes, federal regulations and case law all indicate that proper focus generally is on jobs in national, not regional, economy).

The Tenth Circuit has declined to draw a "bright line" establishing the number of jobs necessary to constitute a significant number as a matter of law. Id. at 1274 n.2 (quoting Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992)). Even so, in the context of determining whether the number of jobs regionally is significant, the Tenth Circuit has cited approvingly several factors to consider in the determination including "the level of claimant's disability; the reliability of the

-9-

vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." Trimiar, 966 F.2d at 1330 (quotation marks and citation omitted). In Trimiar, the Tenth Circuit declined to hold that 650 to 900 statewide jobs was significant regionally as a matter of law, but found that substantial evidence supported the ALJ's factual finding that the number was significant. Id. at 1330–32. Later, in Allen v. Barnhart, 357 F.3d 1140 (10th Cir. 2004), the Tenth Circuit declined to find that 100 appropriate jobs was significant regionally as a matter of law and remanded so that the ALJ could make this factual determination in connection with the Trimiar factors. 357 F.3d at 1144.

Plaintiff has not cited Trimiar, but he essentially argues that because 45,000 jobs or less is not significant nationally as a matter of law, the Court must remand so that the ALJ can conduct a factual analysis under Trimiar. The Tenth Circuit has noted, however, that harmless error may apply where the number of available jobs is "considerably greater" than 100, Allen, 357 F.3d at 1145, or "much larger" than 650 to 900, Raymond, 621 F.3d at 1274 n.2. Accordingly, in several cases, the Tenth Circuit has found harmless error because as a matter of law, the number of jobs constituted a "significant number" nationally. See Shockley v. Colvin, 564 F. App'x 935, 940–41 (10th Cir. 2014) (215,000 jobs); Chrismon v. Colvin, 531 F. App'x 893, 899–900 (10th Cir. 2013) (212,000 jobs); Stokes v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 jobs).

Here, the Court finds that as a matter of law, 45,000 is a significant number of jobs nationally. The 45,000 jobs is a "considerably greater" number than 100, Allen, 357 F.3d at 1145, and "much larger" than 650 to 900, Raymond, 621 F.3d at 1274 n.2. In addition, several courts have found significant as a matter of law various numbers of jobs nationally between 25,000 and 55,000. See Collins v. Berryhill, 743 F. App'x 21, 25 (7th Cir. 2018) (55,000 jobs nationally),

reh'g denied (Sept. 24, 2018), cert. denied, 139 S. Ct. 1209 (2019); Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014) ("close call" but 25,000 jobs significant nationally); Fox v. Colvin, No. 14-489-R, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) (32,000 jobs nationally); see also Evans v. Colvin, 640 F. App'x 731, 736–37 (10th Cir. 2016) (for purposes of attorney fees, Commissioner "substantially justified" in arguing that 18,831 remaining jobs nationally sufficient for applying harmless error). Similarly, although not in the context of harmless error analysis, many courts have affirmed ALJ findings that a number substantially less than 45,000 is significant nationally. See Lynn v. Colvin, 637 F. App'x 495, 499 (10th Cir. 2016) (24,900 jobs nationally); Rogers v. Astrue, 312 F. App'x 138, 142 (10th Cir. 2009) (11,000 jobs nationally); Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs nationally); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997) (650 jobs statewide and 30,000 jobs nationally); Murray v. Berryhill, No. 17-1086-JWL, 2018 WL 2159788, at *5 (D. Kan. May 10, 2018) (6,000 jobs nationally).

Plaintiff cites Chavez v. Barnhart, 126 F. App'x 434 (10th Cir. 2005), for the proposition that harmless error should not be applied when the number of jobs nationally is only 45,000. In Chavez, the vocational expert testified that an occupation had 49,957 available jobs nationally, but only 199 jobs regionally. 126 F. App'x at 436. The Tenth Circuit remanded because "the ALJ did not have an opportunity to evaluate whether the parking lot attendant job, standing alone, existed in significant numbers under the statute." Id. The Tenth Circuit emphasized the fact-specific nature of the inquiry and that the resolution "should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." Id. (quoting Trimiar, 966 F.2d at 1330 (further citations omitted)).

Here, unlike Chavez, no record evidence suggests any potential shortage of jobs regionally.

See Chavez, 126 F. App'x. at 436 (significant number question for ALJ "particularly appropriate where . . . the number of jobs in the region is relatively small—199"); see also Evans, 640 F. App'x at 736 ("[A] close reading of Chavez suggests it was the extremely low number of jobs in Oklahoma (199) that drove our reluctance to find harmless error."). As the Tenth Circuit has explained, Chavez was decided before Raymond clarified "'that the relevant test is either jobs in the regional economy or jobs in the national economy,' although generally the focus is on the national economy." Evans, 640 F. App'x at 736 (quoting Raymond, 621 F.3d at 1274 n.2).

In sum, because the job of document preparer had a significant number of jobs available nationally and plaintiff does not dispute the ALJ finding that he could perform that job with the limitation related to one to two step tasks, the ALJ's failure to include the limitation in the RFC was harmless.

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

Dated this 13th day of April, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
